UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
At Chattanooga

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                  No. 1:17-cr-159-CLC-SKL

GEORGE WILLIAM GAINES, JR.,

    Defendant.

## MOTION FOR VARIANCE

    This case began with an attraction between a seventeen-year-old girl (hereinafter referred to by her initials, A.C.) and forty-seven-year-old Mr. Gaines. In Georgia, where Mr. Gaines lived, such a relationship was legal under the law, even if not desirable by the girl's parents, as the age of consent is 16.[1]

    In 1988, Mr. Gaines had obtained a high school diploma at the age of 19; he attended special education classes beginning in first grade. (Presentence Report, 'PSR', ¶ 59). At that time, doctors diagnosed him with ADHD and put him on Ritalin. (PSR, ¶ 57). Mr. Gaines has worked as a truck driver his entire adult life, just as his parents had done. (PSR, ¶¶ 49, 59, 60).

    In 2013, Mr. Gaines began working for SPT Trucking in 2013 in Rome, Georgia, an employment relationship that lasted just over four years, ending at the time of his arrest. (PSR, ¶ 60). Judy Cooper and her two adult children, Leann Sanford and Jeff Cooper, own the business. The victim in this case is Jeff Cooper's daughter. She was often at the business, chatting and flirting with drivers. The attention flattered Mr. Gaines.

    Many months after they first met, Mr. Gaines became involved with A.C., who is now

---

[1] O.C.G.A. § 16-6-3

1

18, in a voluntary physical relationship. When her family learned of the teenager's relationship with Mr. Gaines, they confiscated her phone. Mr. Gaines bought and gave her another phone, and the couple remained in contact through texting and use of the cell phone application FaceTime, which enables video calls. Evidence revealed hundreds of calls between the two. (FBI ROI, 11/28/2017). Mr. Gaines and A.C. expressed love for each other and talked about being together in the future. (*Id*; FBI ROI, 12/05/2017). On September 5, 2017, Mr. Gaines asked his young girlfriend to marry him; she responded yes. (FBI ROI, 12/11/2017). A.C. showed him how to text and use FaceTime and other applications. A.C. represented that she and Mr. Gaines were in a relationship, as indicated on her Facebook on August 31, 2016. Chat logs further demonstrate the consensual nature of the relationship. For instance, on March 1, 2017, the two stated they loved each other. (FBI ROI, 11/28/2017). When Ms. Cooper said, "George is all I need to have", he echoed the words back to her and added, "I would be lost without you." *Id*.

The applicable guideline for Mr. Gaines's convictions on Count 3, a conviction under 18 U.S.C. § 2252A(a)(5)(B), is U.S.S.G. § 2G2.2. This ordinarily results in a base offense level of 18. USSG § 2G2.2(a)(1). However, the PSR applies a cross-reference at USSG § 2G2.2(c)(1) to USSG § 2G2.1, because the relevant conduct shows that "the offense involved causing ... a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." USSG § 2G2.2(c)(1).

Mr. Gaines acknowledges that the cross-reference in U.S.S.G. § 2G2.2 has been interpreted broadly. In *Starr*, the Iowa district court applied the cross-reference where Mr. Starr caused the minor to produce home videos as part of a phone sex relationship, notwithstanding that he never met her in person. *U.S. v. Starr*, 486 F.Supp.2d 940 (N.D. Iowa). The Court found the enhancement to be appropriate because Mr. Starr persuaded and enticed the minor to make child pornography, as a part of the dominance and submission sexual practice that he encouraged

2

and developed with her. *Starr*, 486 F.Supp. at 946.

The facts in Mr. Gaines's case stand in stark contrast to the power dynamic present in Mr. Starr's case. Mr. Gaines concedes that in at least one exchange between he and A.C., he asks her to send him a photo. However, even if the cross-reference could technically apply to Mr. Gaines' case, the court should decline to apply the cross-reference, given the nature of the relationship between Mr. Gaines and A.C., along with Mr. Gaines's lack of intent to do distribute the images of A.C.

The cross-reference nearly doubles Mr. Gaines's base offense level from 18 to 32. USSG § 2G2.1(a). Under § 2G2.2, Mr. Gaines's base offense level is 18. A two-level reduction would apply because there is no evidence that Mr. Gaines intended to traffic in the images. USSG § 2G2.1(b(1). Mr. Gaines submits that the enhancement in USSG § 2G2.1(b)(3)(D) and (E) should not apply because the images were not produced in an effort to coerce A.C. to engage in sexual activity. Mr. Gaines and A.C. were in a consensual relationship, and she produced images and voluntarily shared them with Mr. Gaines. In addition, A.C. taught Mr. Gaines how to use FaceTime and take screen shots of her engaged in sexual conduct. Mr. Gaines also submits that the two-level enhancement for use of a computer USSG § 2G2.1(b)(6) should not apply, given that numerous courts have recognized that this should no longer qualify as an enhancement, given almost 100% of child pornography offenses now involve the use of a computer. This enhancement skews almost all child pornography receipt and possession cases upward and fails to provide meaningful separation of offenders. *See* Troy Stabenow, *A Method for Careful Study: A Proposal for Reforming \*494 the ChildPornography Guidelines,* 24 FED. SENT'G REP. 2, 122 (2011). For instance, when the computer-use enhancement was first introduced, only 28% of offenders used computers. Today, nearly 97% of offenders use a computer, and the enhancement is, for all intents and purposes, part-and-parcel of the offense. *Id.* Therefore, Mr. Gaines submits

3

that the more appropriate adjusted offense level should be 14. With a criminal history category of I, that results in a guideline range of 15-21 months.

The enhanced punishment in USSG § 2G2.1(a) was designed to implement the "common sense notion that ... [a] possessor who has manufactured the pornography in his possession is both more culpable and more dangerous than the one who has ... possessed the pornography and no more." *United States v. Dawn,* 129 F.3d 878, 884 (7th Cir.1997). Typically this cross-reference applies to adults who coerce naïve, vulnerable children to produce sexually explicit images of themselves. Here, A.C. was much more well-versed in the technology of sharing these images, admitted in her statement to sharing similar images with prior partners, and in fact taught Mr. Gaines how to use that technology. A.C. was also sexually experienced, so it as not a situation where Mr. Gaines was exposing her to a degree of sexual intimacy that she had not yet experienced.

Every possession necessarily involves a receipt (apart from the even more culpable possibility of having created the pornography, which Mr. Gaines did not do). Here, there is no evidence of trafficking activity warranting a more severe sentence. Mr. Gaines is less culpable than a defendant who takes advantage of a vulnerable young child's ignorance and inexperience in introducing them to sexual activity and coercing them to produce images.

The argument has been made in this circuit that "homegrown" child pornography is outside the grasp of federal power. *United States v. Chambers*, 441 F.2rd 438, 454 (6th Cir. 2006). In response, the Sixth Circuit held that, "Congress has a rational basis for believing that homegrown child pornography can feed the national market and stimulate demand." *Chambers*, 441 F.3d at 455, citing *United States v. Gann*, 160 Fed. Appx. 466, 472 (6th Cir. 2005). Even so, few of the child pornography cases that appear before this Court are factually similar to Mr. Gaines' case, in that, 1) he did not have a collection of child pornography images; 2) he was in a

4

mutually consensual relationship with the subject of the images; 3) did not intend nor did he share the images; and 4) A.C. took photos of herself and willingly shared them with Mr. Gaines. Although she was under the 18-year limit that would allow her to be considered an adult under federal law, A.C. was sexually experienced before meeting Mr. Gaines, which she admits in her recorded interview. For the foregoing reasons, Mr. Gaines submits that a sentence with the range of 15-21 months is appropriate.

Respectfully submitted,

FEDERAL DEFENDER SERVICES
OF EASTERN TENNESSEE, INC.


By: /s/ *Gianna Maio*
Gianna Maio
Assistant Federal Defender
835 Georgia Avenue, Suite 600
Chattanooga, Tennessee 37402
(423) 756-4349


**Certificate of Service**

I HEREBY CERTIFY that on January 11, 2019, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

*/s/ Gianna Maio*
Gianna Maio
Assistant Federal Defender